**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ADVANCED AERODYNAMICS, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>SPIN MASTER, LTD.,<br><br>     Defendant. | CIVIL ACTION NO. 6:21-cv-00002<br><br>_____<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff ADVANCED AERODYNAMICS, LLC (hereinafter, "Plaintiff" or "Advanced Aerodynamics") files this Complaint for Patent Infringement against Defendant SPIN MASTER, LTD. (hereinafter, "Spin Master" or "Defendant") as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of one or more claims of the following patents (collectively, the "Patents-in-Suit"), which were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D**, and **Exhibit E**, respectively:

| | Patent No. | Title |
|---|---|---|
| A. | 8,528,854<br>(the "'8,854 Patent") | SELF-RIGHTING FRAME AND AERONAUTICAL VEHICLE |
| B. | 9,067,667<br>(the "'667 Patent") | SELF-RIGHTING FRAME AND AERONAUTICAL VEHICLE |
| C. | 9,216,808<br>(the "'808 Patent") | SELF-RIGHTING FRAME AND AERONAUTICAL VEHICLE |
| D. | 9,434,462<br>(the "'462 Patent") | SELF-RIGHTING FRAME AND AERONAUTICAL VEHICLE |
| E. | 10,569,854<br>(the "'9,854 Patent") | SELF-RIGHTING AERONAUTICAL VEHICLE AND METHOD OF USE |

2.      Plaintiff is the owner of the Patents-in-Suit and possesses all right, title and interest in the Patents-in-Suit, including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages.

3.      Plaintiff seeks injunctive relief and monetary damages.

4.      Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

5.      Each of Advanced Aerodynamics' licensees is contractually obligated to comply with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

## PARTIES

6.      Advanced Aerodynamics is a limited liability company organized and existing under the laws of the State of Florida and maintains its principal place of business at 300 NE 12th Avenue, #601, Hallandale Beach, Florida (Broward County), 33009.

7.      Based upon information and belief after reviewing public information, Spin Master, Ltd. is a corporation existing under the laws of Canada with its principal place of business at 225 King Street West, Suite 200, Toronto, Ontario, M5V 3M2, Canada.  Spin Master Ltd. is an operating company that operates globally, including in the United States.

Upon information and belief, Defendant ships, distributes, makes, uses, offers for sale, sells, and/or advertises (and has done the same since, upon information and belief, at least 2012) aeronautical vehicles that have self-righting frames, including the following (collectively, the "Accused Products").

| | |
|---|---|
| • AirHogs Atmosphere Axis ("Atmosphere Axis") |  |
| • AirHogs Drone Power Racer ("Power Racer") |  |
| • AirHogs Hyper Drift ("Hyper Drift") |  |
| • AirHogs Hyper Stunt ("Hyper Stunt") |  |

| | |
|---|---|
| • AirHogs Roller Copter ("Roller Copter") |  |
| • AirHogs Star Wars (X-Wing v. Deathstar) ("Deathstar") |  |
| • AirHogs Supernova ("Supernova") |  |

## JURISDICTION AND VENUE

8.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9.      The Court has personal jurisdiction over Defendant because: Defendant has minimum contacts within the State of Texas and in the Western District of Texas; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in the Western District of Texas; Defendant has sought protection and benefit from the laws of the State of Texas; Defendant regularly conducts business within the State of Texas, and within the Western

District of Texas, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and in the Western District of Texas.

10.     More specifically, Defendant, directly and/or through intermediaries, ship, distribute, make, use, import, offer for sale, sell, and/or advertise its products in the United States, the State of Texas, and the Western District of Texas.  Based upon public information, Defendant has committed patent infringement in the State of Texas and in the Western District of Texas. Defendant solicits customers in the State of Texas and in the Western District of Texas.  Defendant has many paying customers who are residents of the State of Texas and the Western District of Texas and who use Defendant's products in the State of Texas and in the Western District of Texas.

11.     Spin Master has furthermore hired employees who work in this judicial district and/or directs their efforts toward this judicial district and to advance the sale of its products, including sales of the Accused Products, by giving advice on store displays/planograms and assisting them with inventory management advice to companies that carry Spin Master's products like, for instance, Walmart, Target, and Barnes & Noble.

12.     Spin Master also derives benefits from its presence in the district, both physical and online through purchases made using one or more interactive web sites, and sales by its retail partners with stores located in this judicial district.  Spin Master has made and intentionally placed the Accused Products into the stream of commerce knowing of the Patents-in-Suit, knowing of the accusation of infringement of the Patents-in-Suit, and that they were to be offered for sale in Texas, including in this judicial district.  With knowledge of the Patents-in-Suit, Spin Master has furthermore encouraged retailers and customers to sell and use, respectively, the Accused Products throughout the United States.

13.     Spin Master is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute.  This is due, *inter alia*, to its substantial business in this forum, including: (i) a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct in Texas, and/or deriving substantial revenue from goods and services provided to individuals in Texas, including this district.

14.     Based upon publicly-available information, Spin Master is actively litigating another patent infringement case filed against it in this district.  In the matter of *Interactive Play Devices LLC v. Spin Master Ltd.* (W.D. Tex. No. 6:20-cv-00066), Spin Master has answered the Complaint (including raising counterclaims) and has participated in claim construction.

15.     Because Spin Master is a corporation organized outside of Texas and the United States, venue in this district is proper under 28 U.S.C. § 1391(c)(3).

## BRIEF HISTORY OF ADVANCED AERODYNAMICS

16.     In 2009, Advanced Aerodynamics LLC was formed in Florida (www.xtflyer.com). Mr. James Dees, a law enforcement officer, bomb technician, and former US Marine infantry officer, together with an engineer, Mr. "Max" Gaofei Yan, developed a new and unique drone design. The design allows drones to crash in midair or into the ground in any position, and self-right without human or mechanical intervention.  That design was the first of any aeronautical vehicle in aviation history to operate this way.

17.     The company began to apply for patents worldwide including the US, Canada, Japan, EU, Australia, China, and Israel.  Within a few years, a number of patents had been granted—one country after another.  The patent portfolio grew and continues to grow, covering various embodiments of Advanced Aerodynamics' unique and unprecedented design.

18.     While the patents were pending, the company began to promote this unique and practical technology to a number of companies. The first Advanced Aerodynamics' licensed product to enter the marketplace with this design was called the "ORB." The ORB went on to be sold in Best Buy and a number of other major department stores. Additionally, it won the Hot Product award by CNN Money in 2012. Following this success, a number of different mini-drones with its design, including the Lily Ball, Alien Sphere, XT Flyer 001, and XT Flyer 005, were released. Costco and Walmart were major sales outlets for these products.

19.     Advanced Aerodynamics continues its research and development activities in efforts to meet the evolving needs of the market. Some of the top universities in the aviation field have been involved in this R&D, one of them being Embry-Riddle Aeronautical University.

20.     To promote its patented designs and products, Advanced Aerodynamics has for the past 7 years been very active and visible in the industry by attending as vendors different trade shows and conventions, including CES in Las Vegas, the Hong Kong Toy Fair, the Neuberger Toy Show, and AUVSI Drone and Unmanned System shows in different cities within the US.

21.     Advanced Aerodynamics' current product offerings includes the XT-001, XT-005, and the XT Kids Racing Drone. Other designs are under development, including the XT-002, which is provisioned with an AR system, and the XT-003, which is equipped with a camera for FPV goggles.

22.     Advanced Aerodynamics takes a very serious and active role in protecting the intellectual property covered by its patent portfolio. Accordingly, the company has sought to litigate and otherwise enforce its intellectual property rights against a number of major entities that were using its patented design, including, among other entities, the "Flying Sphere" by Japanese Department of Defense, and the "Atlas Flying Ball" by Unmanned Cowboys in the US. Advanced

Aerodynamics will continue to look for licensing and business opportunities and when needed, enforce its intellectual property on companies that sell infringing products in order to protect its business operations.

23.    Advanced Aerodynamics has spent substantial resources and time developing and promoting the technologies in the Patents-in-Suit.  The photographs below memorialize this use of resources and time over the years since the Patents-in-Suit were filed:



Two inventors, James Dees and Gaofei "Max" Yan holding a prototype  of the XT Flyer drone.



Gaofei "Max" Yan visiting ERAU



An XT Flyer prototype being tested in a lab in ERAU



James Dees visiting Florida Central University for AR/VR technology research



An XT Flyer prototype being tested in a lab in Georgia Tech



Aerodynamics research in a testing field



Joint Project between Advanced Aerodynamics and Miami Dade College

24.     Advanced Aerodynamics has spent substantial resources and time in having its own products manufactured, distributed and sold in the marketplace as well as other third-party licensed drone products.



James Dees signing a contract with Chinese partner for manufacturing ORB



James Dees visiting one of the production factories for Advanced Aerodynamics



Advanced Aerodynamics' team visiting China



Gaofei "Max" Yan holding an ORB flying toy in the production line



Gaofei "Max" Yan holding the ORB for Chinese Market in the production line



Mr. Rosenfeld, Chairman of Advanced Aerodynamics, testing XT 002 drone in China



Production line for XT 001 mini drone in a factory in China.



Test flight for a XT Flyer prototype in a factory.



Design and making XT Flyer mini drone

25.    Advanced Aerodynamics has spent considerable time and expense in marketing and visibly promoting the technologies in the Patents-in-Suit.



Dr. Weisberg, Advanced Aerodynamics' president at the time, at the 2012 Hong Kong Toy Fair

15



Gaofei "Max" Yan at the Hong Kong Toy Fair 2013





Hong Kong Toy Fair 2017



One customer flying our product in a trade show.



Gaofei "Max" Yan at the AUVSI in 2013



Demonstration of XT Flyer at a drone conference meeting.



James Dees visiting one of Advanced Aerodynamics' distributors



James Dees visiting one of Advanced Aerodynamics' customers



Gaofei "Max" Yan visiting one of Advanced Aerodynamics customers. (Trademark Global)



Gaofei "Max" Yan visiting Advanced Aerodynamics' customers



CES Las Vegas in 2016



CES Las Vegas in 2017



Demonstration at another trade show



Advanced Aerodynamics' booth at a trade show



XT Flyer products being promoted in a Chinese school





Kids drone training camp in different cities in China with XT 005 drone









Kids Drone Racing competition with XT 001 in China

**Product Information**



Catalog for the XT 001 and 002 drones



CNN Money on ORB being awarded as hot product in 2012



Dr. Weisberg holding an ORB in Best Buy in 2012



Catalog for the XT 001 F and XT 005



XT 001 F



XT 002



XT 005



The XT 001 drone product in a store



XT Flyer Mini Racing Drone

 

Licensed products: the Lily Ball and Flying Alien Sphere

26.     Advanced Aerodynamics is and has been, at all relevant times, a direct competitor to Spin Master.

27.     Advanced Aerodynamics has lost customers, sales, market share, and goodwill as a result of Spin Master's infringement of the Patents-in-Suit.

28.     All of Advanced Aerodynamics' business is centered on drones, all of its sales are strictly related to drones, and all sales are of drones incorporating inventions disclosed by the Patents-in-Suit.

**ADVANCED AERODYNAMICS' ASSERTED PATENTS**

29.     The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office on September 10, 2013 (the '8,854 Patent), June 30, 2015 (the '667 Patent), December 22, 2015 (the '808 Patent), September 6, 2016 (the '462 Patent), and February 25, 2020 (the '9,854) after full and fair examinations.  *See* Exs. A-E, respectively.

30.     Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Spin Master for infringement and recover past damages.

## DEFENDANT'S ACTIVITIES

31.     Defendant uses, sells, advertises, offers for sale, ships, imports, or otherwise distributes   aeronautical vehicles with self-righting frames, including the Accused Product, to its customers, either directly or through third-party vendors.

32.     Defendant was made further aware and put on notice of its infringement of the '8,854 Patent, '667 Patent, '808 Patent, '462 Patent (and their FR, DE, GB, JP, AU, CA, and IL counterparts) by way of email exchanges between the parties on October 9, 2017 and thereafter. They were made further aware and put on notice of their infringement of the '8,854 Patent, '667 Patent, '808 Patent, '462 Patent (and their FR, DE, GB, JP, AU, CA, and IL counterparts) and pending applications (one of which subsequently issued as the '9,854 Patent) by way of letter dated April 26, 2019.

33.     According to public information, Defendant owns, operates, advertises, and/or controls at least the websites https://www.spinmaster.com and www.airhogs.com through which Defendant advertises, sells, offers to sell, promotes, provides and/or educates customers about its products, including the Accused Products.

34.     Spin Master designs, manufactures, distributes and sells a wide variety of popular toys throughout the world and is one of the largest toy companies in North America. *See* "Spin Master Celebrates Its 20th Anniversary," https://www.globenewswire.com/news-release/2014/09/09/664758/10097837/en/Spin-Master-Celebrates-Its-20th-Anniversary.html

35.     Spin Master's toys have been marketed, distributed and sold throughout the world, including in the United States.

36.     Spin Master sells the Accused Products into the United States through retail and electronic commerce channels, where they are then sold in retail stores (*e.g.*, Target, Walmart,

Barnes & Noble) physically located in this judicial district, as well as intentionally resold into this State of Texas and into this judicial district through various interactive web sites such as amazon.com, walmart.com, target.com, barnesandnoble.com, www.airhogs.com, and www.spinmaster.com.

37.     Between 2014 and the date of the original Complaint, Spin Master has maintained employees whose purpose it is to encourage and support Walmart in the sale of its products, including the Accused Products, in the United States.  Between 2014 and the date of the original Complaint, Spin Master has maintained employees whose purpose it is to encourage and support Target in the sale of its products, including the Accused Products, in the United States.  Between 2014 and the date of the original Complaint, Spin Master has maintained employees whose purpose it is to encourage and support Barnes & Noble in the sale of its products, including the Accused Products, in the United States.  Between 2014 and the date of the original Complaint, Spin Master maintained employees whose purpose it is to encourage and support Amazon.com in the sale of its products, including the Accused Products, in the United States.

38.     At all times between 2014 and the present date, Spin Master has maintained one or more U.S. offices staffed with sales and/or marketing employees for the purpose of promoting and supporting one or more U.S. retailers in the sale of the Accused Products.  Between 2016 and the current date, Spin Master created and/or used and/or provided to others content (*e.g.,* advertisements, YouTube and other marketing videos, web pages, instruction manuals, marketing materials) created to advance the sale and use of the Accused Products in the United States. With Spin Master's knowledge and consent, others (*e.g.*, Walmart, Target, Barnes & Noble, Amazon.com) have also used this content between 2014 and the date the original Complaint was filed to advance the sale and use of the Accused Products in the United States.

39.     Each of the Accused Products are manufactured by and imported and distributed in the United States and this judicial district (directly and through at least Walmart, Target, Barnes & Noble, and Amazon) by Spin Master, who is responsible for the infringing activity identified in this Complaint, as shown on the boxes of the Accused Products and demonstrated below:

| | |
|---|---|
| • Atmosphere Axis Drone |  |
| • Power Racer Drone | |

| | |
|---|---|
| • Hyper Drift Drone |  |
| • Hyper Stunt Drone |  |

| | |
|---|---|
| • Roller Copter Drone |  |
| • Deathstar Drone | |

| | |
|---|---|
| • Supernova Drone |  |

## **COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,528,854**

40.    Plaintiff re-alleges and incorporates by reference the paragraphs above.

41.    Plaintiff is informed and believes that Spin Master has infringed and continues to infringe one or more claims of the '8,854 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of the below identified  Accused Products under its Air Hogs brand.  Based upon public information, Spin Master has infringed and continues to infringe one or more claims of the '8,854 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-righting frame assembly for an aeronautical vehicle (flying machine, drone, *etc.*).  The Accused Products have a frame assembly which causes them to self-right when it falls to the ground at any position, including in any inverted state (*i.e.* other than right-side up).  Pictorial examples of each of the Accused Products are shown above in Paragraph 7 in this Complaint, but only the specific Accused Products identified and depicted below shall be the "Accused Products" for purposes of this operative Complaint.

42.    The frame assembly of the below individual Accused Products has more than two vertical frames with an uninterrupted, continuous peripheral edge between the top portion of the frame assembly and the base portion of the frame assembly, as shown below:

**Atmosphere Axis Drone**





43.     The frames define a central void and have a central vertical axis with two of the frames being in a fixed relationship.  There is a weighted mass positioned at the bottom of the frame assembly and along a central vertical axis to create a center of gravity near the bottom of the assembly, as shown below:

**Atmosphere Axis Drone**



and have an apex that provides an initial instability to start a self-righting process that returns the products to an upright position, as shown below:

**Atmosphere Axis Drone**



44.     Despite knowledge of the '8,854 Patent as early as 2017, Spin Master continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services in a manner which infringes the '8,854 Patent.

45.     Based upon public information, Spin Master has intentionally induced and continues to induce infringement of one or more claims of the '8,854 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause Spin Master's customers to use the Accused Products in an infringing manner. To the extent that Spin Master is not the only direct infringer of the '8,854 Patent, it instructs its customers on how to infringe the '8,854 Patent through its support and sales to them, including their government and commercial clients, through Spin Master's Sales Outlets.

46.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

47.     Plaintiff is entitled to recover from Defendant its damages (including its lost profit damages and other damages) sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

48.     Defendant's infringement of Plaintiff's rights under the '8,854 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,067,667

49.     Plaintiff re-alleges and incorporates by reference the paragraphs above.

50.     Plaintiff is informed and believes that Spin Master has infringed and continues to infringe one or more claims of the '667 Patent, either literally or under the doctrine of equivalents,

through the manufacture and sale of the below identified Accused Products under its Air Hogs drones brand, as incorporated into the below identified Accused Products. Based upon public information, Spin Master has infringed and continues to infringe one or more claims of the '667 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-righting frame assembly for an aeronautical vehicle (flying machine, drone, *etc.*). The identified Air Hog brand drones have a frame assembly which causes them to self-right when they fall to the ground at any position, including in any inverted state (*i.e.* other than right-side up). Pictorial examples of each of the Accused Products are shown above in Paragraph 7 in this Complaint, but only the specific Accused Products identified and depicted below shall be the "Accused Products" for purposes of this operative Complaint.

51.     The below identified Accused Products have a frame structure with more than one generally vertically oriented frame member with an uninterrupted, continuous peripheral edge between the top portion and base portion, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**SuperNova Drone**



The Accused Products also have at least one generally horizontal oriented frame mechanically coupled to the generally vertical oriented frame member at each intersecting location, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**SuperNova Drone**



with the two frame members defining a central void and arranged in a fixed spatial relationship, and includes a weighted bass in the lower section of the frame assembly that positions the center of gravity near the bottom of the frame assembly and an apex defined at a top of the generally vertically oriented frame member for providing an initial instability to start a self-righting process when placed in an off-kilter and inverted orientation, as shown below:

**Atmosphere Axis Drone**



Base Portion

**Power Racer Drone**



Base Portion

**Hyper Drift Drone**



Base Portion

**SuperNova Drone**



52.     Despite knowledge of the '667 Patent as early as 2017, based upon public information, Spin Master continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '667 Patent.

53.     Based upon public information, Spin Master has intentionally induced and continues to induce infringement of one or more claims of the '667 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause Spin Master's customers to use the Accused Products in an infringing manner. To the extent that Spin Master is not the only direct infringer of the '667 Patent, it instructs its customers on how to infringe the '667 Patent through its support

and sales to them, including their government and commercial clients, through Spin Master's Sales Outlets.

54.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

55.     Plaintiff is entitled to recover from Defendant its damages (including its lost profit damages and other damages) sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56.     Defendant's infringement of Plaintiff's rights under the '667 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,216,808

57.     Plaintiff re-alleges and incorporates by reference the paragraphs above.

58.     Plaintiff is informed and believes that Spin Master has infringed and continues to infringe one or more claims of the '808 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of Accused Products under its Air Hogs brand, as incorporated into the Accused Products.  Based upon public information, Spin Master has infringed and continues to infringe one or more claims of the '808 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-righting frame assembly for an aeronautical vehicle (flying machine, drone, *etc.*).  The Air Hogs brand drones have a frame assembly which causes them to self-right when they fall to the ground at any position, including in any inverted state (*i.e.* other than right-side up).  Pictorial examples of each of the Accused Products are shown above in Paragraph 7 in this Complaint, but only the

specific Accused Products identified and depicted below shall be the "Accused Products" for purposes of this operative Complaint.

59.     The Accused Products include a self-righting frame assembly with multiple frame members arranged in a fixed spatial relationship that provide a passageway for airflow to the interior void, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**



**Roller Copter Drone**



**Deathstar Drone**



**SuperNova Drone**



a portion of the frame members form a dome shaped section with at least one of an apex or protrusion generally centered within the dome section, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**



**Roller Copter Drone**



**Deathstar Drone**



**SuperNova Drone**



and a propulsion system within the interior void, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**



**Roller Copter Drone**



**Deathstar Drone**



**SuperNova Drone**



where the at least one of the apex or protrusion provide an initial instability to begin a self-righting

process when the frame assembly is placed on a generally horizontal surface and in contact with

the apex and protrusion, as shown below:



**Atmosphere Axis Drone**

**Power Racer Drone**

**Hyper Drift Drone**



**Hyper Stunt Drone**

**Roller Copter Drone**

**Deathstar Drone**



**SuperNova Drone**



60.    Despite knowledge of the '808 Patent as early as 2017, based upon public information, Spin Master continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '808 Patent.

61.    Based upon public information, Spin Master has intentionally induced and continues to induce infringement of one or more claims of the '808 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause Spin Master's customers to use the Accused Products in an infringing manner. To the extent that Spin Master is not the only direct infringer of the '808 Patent, it instructs its customers on how to infringe the '808 Patent through its support and sales to them, including their government and commercial clients, through Spin Master's Sales Outlets.

62.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

63.    Plaintiff is entitled to recover from Defendant its damages (including its lost profit damages and other damages) sustained by Plaintiff as a result of Defendant's wrongful acts in an

amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.     Defendant's infringement of Plaintiff's rights under the '808 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 9,434,462

65.     Plaintiff re-alleges and incorporates by reference the paragraphs above.

66.     Plaintiff is informed and believes that Spin Master has infringed and continues to infringe one or more claims of the '462 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of Accused Products under Spin Master's Force1 drones brand, as incorporated into the Accused Products. Specifically, the Accused Products meet each and every element of at least Claim 17 of the '462 Patent, either literally or equivalently, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that comprise a self-righting aeronautical vehicle (the Accused Products have a self-righting frame assembly for an aeronautical vehicle (flying machine, drone, *etc.*)). The vehicle's frame assembly causes the Force1 drones to self-right when it falls to the ground at any position, including in any inverted state (*i.e.* other than right-side up).  Pictorial examples of each of the Accused Products are shown above in Paragraph 7 in this Complaint, but only the specific Accused Products identified and depicted below shall be the "Accused Products" for purposes of this operative Complaint.

67.     The Accused Products have a self-righting frame assembly having a plurality of frame members arranged in a fixed relationship, providing a passageway for airflow into an interior void:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**



**Roller Copter Drone**



**Deathstar Drone**



**SuperNova Drone**



The Accused Products have at least one of an apex and a protrusion located generally centered within at least one arched section, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**



**Roller Copter Drone**



**Deathstar Drone**



**SuperNova Drone**



The Accused Products have a propulsion system located within the interior void, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**



**Roller Copter Drone**



**Deathstar Drone**



**SuperNova Drone**



Upon completion of a self-righting process, the propulsion system is oriented within the self-righting frame assembly to provide a lift force to the vehicle. The at least one of the apex and the protrusion is adapted to provide an initial instability to begin a self-righting process when said frame assembly lands from a position in air onto a generally horizontal surface oriented having the

at least one of the apex and the protrusion contacting the generally horizontal surface, as shown below:

**Atmosphere Axis Drone**





**Power Racer Drone**



**Hyper Drift Drone**



**Hyper Stunt Drone**





**Roller Copter Drone**





## Deathstar Drone



**SuperNova Drone**



After the self-righting process is complete, the propulsion system is oriented vertically, as shown above.

68.     Despite knowledge of the '462 Patent as early as 2016, Spin Master continues to encourage, instruct, enable, and otherwise cause its customers to use its products, in a manner which infringes the '462 Patent.

69.     Based upon public information, Spin Master has intentionally induced and continues to induce infringement of one or more claims of the '462 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause Spin Master's customers to use the Accused Products in an infringing manner. To the extent that Spin Master is not the only direct infringer of the '462 Patent, it instructs its customers on how to infringe the '462 Patent through its support

and sales to them, including their government and commercial clients, through Spin Master's Sales Outlets.

70.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

71.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.     Defendant's infringement of Plaintiff's rights under the '462 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,569,854

73.     Plaintiff re-alleges and incorporates by reference the paragraphs above.

74.     Plaintiff is informed and believes that Spin Master has infringed and continues to infringe one or more claims of the '9,854 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of Accused Products under its Air Hogs brand, as incorporated into the Accused Products. Based upon public information, Spin Master has infringed and continues to infringe one or more claims of the '9,854 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-righting frame assembly for an aeronautical vehicle (flying machine, drone, *etc.*). The identified Air Hogs brand drones have a structural frame and a weighted mass which causes them to self-right when they fall to the ground at any position, including in any inverted state (*i.e.* other than right-side up). Pictorial examples of each of the Accused Products are shown above in

Paragraph 7 in this Complaint, but only the specific Accused Products identified and depicted below shall be the "Accused Products" for purposes of this operative Complaint.

75.    The Accused Products comprise a structural frame with an upper and lower region with an exterior that is both convex and elliptical with a void in the center and that can sit upright, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Deathstar Drone**



**SuperNova Drone**



The Accused Products include a maneuvering and lift mechanism (propellers, *etc.*) that communicates with control electronics to control the flight. The maneuvering and lift mechanism and the control electronics are both supported by the frame, as shown below:

**Atmosphere Axis Drone**





### Air Hogs AtmoSphere™

Soar to new heights with the Air Hogs AtmoSphere™! This powerful levitating sphere requires no remote control and hovers above any surface! Control it with the palm of your hand or watch it fly autonomously in any space! Its spherical shape allows the AtmoSphere™ to smoothly bounce off walls and ceilings for non-stop flight. Complete with a palm-sized charging cradle, the AtmoSphere™ is easy-to-use and recharge. Take control with the palm of your hand and discover the high-tech hovering power of the Air Hogs AtmoSphere™!

**Age:** 8+
**Suggested retail price:** $24.99
**Batteries:** 6 AA

For more information on Air Hogs please visit: www.airhogs.com



# Power Racer Drone



- Air Hogs Drone Power Racers are 2-in-1 vehicles: Race along the ground or fly through the sky at super fast speed with the detachable drone!
- Equipped with a turbo drone power source and two power modes, Drone Power Racers are made for competing at breakneck speeds.
- The turbo drone is made with a self-righting cage to ensure you land upright and are ready to lift off – even after an epic crash!
- Made for kids aged 8+. Drone measures 3"x 3"x 2.3", Hover Tech car body measures 6.4" x 3.5" x 2.3". Charges via USB for 15 - 20 min., play for 7 min. Recommended for indoor use. Communication range of 250 ft., and frequency of 2.4 GHz. Controller batteries (2 x AAA) not included.
- Includes: 1 Hover Tech Car Body, 1 Detachable Stunt Drone, 1 Controller, 4 spare Propellers, 1 USB Charge Cable, 1 User Instruction Guide.



**Hyper Drift Drone**



Race on land and blaze across the sky with 2-in-1 Air Hogs Hyper Drift Drone! This RC speeder measuring 8"x 3"x 2.5", is both a land vehicle and flying drone! Powered by a turbo drone engine, it can achieve breakneck speed on the ground. When you hit a roadblock, the detachable drone ejects and soars away, continuing the race in the sky! Hit the stunt button and see your drone twist into a 360° barrel roll! Even after a crash, your drone's self-righting cage ensures it lands upright, making it ready for the next take-off! Race against the best using the Air Hogs 2-in-1 Hyper Drift Drone!



**Deathstar Drone**



**SuperNova Drone**



The Accused Products include a weighted mass (the engine) in the lower regions of the frame, which assists in the self-righting process by way of gravity, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**

**Deathstar Drone**



gravitational force

**SuperNova Drone**

gravitational force

The Accused Products can be powered on (*e.g. via* on/off button placed on the aeronautical vehicle), and can be caused to rise to an airborne position using a lifting force from the maneuvering and lift mechanism:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Deathstar Drone**



**SuperNova Drone**



The drone can be descended toward the ground until it contacts the ground, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**



**Deathstar Drone**



**SuperNova Drone**



An instability is created from the shape of the upper region of the frame when that contacts the horizontals surface, and the shape of the frame and the weighted mass (engine) cause the drone to right itself. The below picture clearly shows the drone engaging in a self-righting process when the drone contacts the horizontal surface and that process results in the drone returning to an upright position, as shown below:

**Atmosphere Axis Drone**



**Power Racer Drone**



**Hyper Drift Drone**





76.    Despite knowledge of the '9,854 Patent as of, upon information and belief, the issuance date of the '9,854 Patent, but no later than the date of the filing of this Complaint in this action, based upon public information, Spin Master continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '9,854 Patent.

77.    Based upon public information, Spin Master has intentionally induced and continues to induce infringement of one or more claims of the '9,854 Patent in this district and

elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise cause Spin Master's customers to use the Accused Products in an infringing manner. To the extent that Spin Master is not the only direct infringer of the '9,854 Patent, it instructs its customers on how to infringe the '9,854 Patent through its support and sales to them, including their government and commercial clients, through Spin Master's Sales Outlets.

78.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

79.    Plaintiff is entitled to recover from Defendant its damages (including its lost profit damages and other damages) sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.    Defendant's infringement of Plaintiff's rights under the '9,854 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

81.    Plaintiff hereby demands a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

82.    Plaintiff respectfully requests the following relief:

A.    An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by the Defendant;

B.    An adjudication that Defendant has induced infringement of one or more claims of the Patents-in-Suit;

C.      An award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial; for the avoidance of doubt, Plaintiff seeks as its measure of damages its lost profits from Defendants but is entitled to at least a reasonable royalty;

D.      A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement with respect to any one or more of the claims of the Patents-in-Suit;

E.      That this Court find Defendant liable for willful infringement of the Patents-in-Suit;

F.      That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

G.      Any further relief that this Court deems just and proper.

Dated:  January 4, 2021                    Respectfully submitted,

                                           By: */s/ Jonathan Hardt*
                                           Michael Simons
                                           Texas State Bar No. 24008042
                                           Jonathan L. Hardt
                                           Texas State Bar No. 24039906
                                           WILLIAMS SIMONS & LANDIS PLLC
                                           327 Congress Ave., Suite 490
                                           Austin, Texas 78701
                                           Tel: (512) 543-1354
                                           msimons@wsltrial.com
                                           jhardt@wsltrial.com

                                           C. Matthew Rozier*
                                           Colorado Bar No. 46854
                                           WILLIAMS SIMONS & LANDIS
                                           1550 Larimer Street, Suite 1067
                                           Denver, CO 80202
                                           Tel: (512) 717-6583
                                           mrozier@wsltrial.com

                                           **HENINGER GARRISON DAVIS, LLC**
                                           James F. McDonough, III (GA 117088)
                                           Jonathan R. Miller (GA 507179)*
                                           Travis E. Lynch (GA 162373)*
                                           3621 Vinings Slope, Suite 4320
                                           Atlanta, Georgia 30339
                                           Tel: (404) 996-0869, -0863, -0867
                                           jmcdonough@hgdlawfirm.com
                                           jmiller@hgdlawfirm.com
                                           tlynch@hgdlawfirm.com

                                           ***ATTORNEYS FOR PLAINTIFF ADVANCED
                                           AERODYNAMICS, LLC***

 * application for admission *Pro Hac Vice* forthcoming