UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ADVANCED AERODYNAMICS, LLC | ) | Docket No. WA 21-CA-002 ADA |
| | ) | |
| vs. | ) | Waco, Texas |
| | ) | |
| SPIN MASTER, LTD. | ) | May 25, 2021 |

TRANSCRIPT OF VIDEOCONFERENCE DISCOVERY HEARING
BEFORE THE HONORABLE ALAN D. ALBRIGHT

APPEARANCES:

For the Plaintiff:          Mr. James F. McDonough
                            Heninger Garrison Davis, LLC
                            3621 Vinings Slope, Suite 4320
                            Atlanta, Georgia 30339

                            Mr. Jonathan L. Hardt
                            Rozier & Hardt, PLLC
                            1105 Nueces Street, Suite A
                            Austin, Texas 78701

For the Defendant:          Ms. Claire A. Henry
                            Ward Smith & Hill, PLLC
                            1507 Bill Owens Parkway
                            Longview, Texas 75604

                            Mr. Samuel F. Davenport
                            Mintz, Levin, Cohn, Ferris,
                            Glovsky & Popeo, P.C.
                            One Financial Center
                            Boston, Massachusetts 02111

Court Reporter:             Ms. Lily Iva Reznik, CRR, RMR
                            501 West 5th Street, Suite 4153
                            Austin, Texas 78701
                            (512)391-8792

Proceedings reported by computerized stenography,
transcript produced by computer-aided transcription.

| | | |
|---|---|---|
| 09:02:58 | 1 | THE COURT:  Good morning, everyone. |
| 09:03:04 | 2 | Suzanne, if you'd be so kind as to call the case. |
| 09:03:07 | 3 | THE CLERK:  Sure. |
| 09:03:08 | 4 | Discovery hearing in Civil Action W-21-CV-2, |
| 09:03:12 | 5 | styled, <u>Advanced Aerodynamics, LLC vs. Spin Master,</u> |
| 09:03:16 | 6 | <u>Limited</u>. |
| 09:03:16 | 7 | THE COURT:  If I could have announcements from |
| 09:03:18 | 8 | counsel, please. |
| 09:03:20 | 9 | MR. HARDT:  Good morning, your Honor. |
| 09:03:21 | 10 | This is Jonathan Hardt of the firm Rozier & |
| 09:03:24 | 11 | Hardt.  With me today is Jim McDonough of the firm |
| 09:03:29 | 12 | Heninger, Garrison & Davis.  And you may have noticed, |
| 09:03:32 | 13 | your Honor, one change in our firm affiliation.  I do have |
| 09:03:34 | 14 | a housekeeping matter we may need to raise, but I'll let |
| 09:03:38 | 15 | the announcements finish first. |
| 09:03:40 | 16 | THE COURT:  Okay.  I'll come back to you in a |
| 09:03:42 | 17 | second then. |
| 09:03:44 | 18 | MR. DAVENPORT:  Good morning, your Honor. |
| 09:03:47 | 19 | Sam Davenport of Mintz Levin here.  Claire Henry |
| 09:03:51 | 20 | of the Ward Smith firm is joining, as well.  I'll be doing |
| 09:03:54 | 21 | the arguing.  And we, of course, represent Spin Master, |
| 09:03:56 | 22 | Limited. |
| 09:03:58 | 23 | THE COURT:  I'm happy to hear, Mr. Hardt, |
| 09:04:02 | 24 | whatever it is you wanted to say. |
| 09:04:05 | 25 | MR. HARDT:  Yes, your Honor.  Thank you. |

| | |
|---|---|
| 09:04:06 | 1 |
| 09:04:09 | 2 |
| 09:04:14 | 3 |
| 09:04:16 | 4 |

As of this morning, Matthew Rozier and myself are no longer at the Williams, Simons & Landis firm.  We're at Rozier & Hardt, so it's a good day for us in that respect.  One thing that has not happened this morning --

09:04:23    5          THE COURT:  Mr. Hardt, we're --

09:04:26    6          MR. HARDT:  -- is to file with your Honor to note

09:04:29    7  that change so there's no confusion as to which firm is

09:04:30    8  appearing.

09:04:30    9          THE COURT:  Mr. Hardt, for some reason, you are

09:04:32   10  freezing up kind of in the middle of what you're doing.

09:04:35   11  Just so -- I at least missed, and Lily might have missed,

09:04:41   12  what it was you said, the gist of which was, I know you

09:04:44   13  changed firms.  But if you'd repeat what you said, I'd

09:04:47   14  like to get it all down on the record.

09:04:50   15          MR. HARDT:  Your Honor, I may try it one more

09:04:53   16  time without the video.  Is this better?

09:04:55   17          THE COURT:  Yes, sir, it is.

09:04:57   18          MR. HARDT:  So as of this morning, Matthew Rozier

09:05:00   19  and myself have changed firms.  We are now at Rozier &

09:05:05   20  Hardt, instead of William, Simons, Landis.  One thing that

09:05:08   21  hasn't happened this morning is that we have not yet filed

09:05:11   22  on your docket a change of affiliation.  So I just wanted

09:05:15   23  to note that for the record so that you and your chambers

09:05:18   24  don't have any confusion as to whether the WSL firm is

09:05:23   25  appearing before you this morning.

| 09:05:27 | 1 | THE COURT:  I think I can live with that.  Anyone |
| 09:05:30 | 2 | who knows me knows I will be the very last person to |
| 09:05:34 | 3 | comment on anyone's decision to change firms.  And so, we |
| 09:05:37 | 4 | were at a -- I was at a meeting last week, I think, of the |
| 09:05:43 | 5 | Austin American College Trial Lawyers and we were trying |
| 09:05:49 | 6 | to figure out who we can add, and one of the lawyers said, |
| 09:05:52 | 7 | well, we oughta just let Albright nominate somebody.  He's |
| 09:05:56 | 8 | been at every firm in Austin.  So it's reputation that |
| 09:06:01 | 9 | precedes me. |
| 09:06:02 | 10 | So as I recall, Mr. Davenport, unfortunately, |
| 09:06:05 | 11 | last week, I had to cut you off.  I apologize for that. |
| 09:06:09 | 12 | And so, we can resume this morning and I look forward to |
| 09:06:14 | 13 | hearing from you.  Do I have that -- is my recollection |
| 09:06:16 | 14 | right? |
| 09:06:16 | 15 | MR. DAVENPORT:  That's correct, your Honor. |
| 09:06:18 | 16 | Although there's no need to apologize.  I think your |
| 09:06:20 | 17 | schedule is probably busier than everyone else's here on |
| 09:06:23 | 18 | the call this morning.  But that is correct -- |
| 09:06:26 | 19 | THE COURT:  I doubt that.  That's why I got out |
| 09:06:28 | 20 | of being a lawyer.  Well, it may be as busy, but I have a |
| 09:06:33 | 21 | lot more control over it.  Well, I don't really anymore, |
| 09:06:36 | 22 | so -- but I appreciate you saying that.  We are -- we're |
| 09:06:41 | 23 | doing everything we can to stay on top of things here. |
| 09:06:44 | 24 | MR. DAVENPORT:  Well, I'll pick up where we left |
| 09:06:46 | 25 | off, your Honor.  And just to set the stage globally, this |

09:06:49  1  dispute is over whether or not Plaintiff Advanced

09:06:53  2  Aerodynamics is entitled to discovery in the form of RFAs

09:06:58  3  and document requests that they've served on the

09:07:01  4  defendant, Spin Master, Limited, under the guise of

09:07:04  5  jurisdictional discovery pursuant to your Honor's November

09:07:07  6  19th, 2020 standing order.  We've objected to that

09:07:11  7  discovery, and we have said that it's not

09:07:16  8  jurisdictional-based discovery.  So that's the high-level

09:07:20  9  description of the dispute.

09:07:22  10  During the last hearing, when we were all

09:07:24  11  together, Mr. McDonough was explaining to all of us why in

09:07:31  12  Advanced Aerodynamics' view, the motion to dismiss that

09:07:35  13  Defendant Spin Master, Limited filed -- and again, that

09:07:37  14  was a motion to dismiss for failure to join a necessary

09:07:40  15  party -- Mr. McDonough was explaining his view as to why

09:07:44  16  that motion to dismiss -- I think the word he used was

09:07:48  17  clearly and obviously raised jurisdictional issues, and

09:07:52  18  because of that, they believed they were entitled to serve

09:07:56  19  jurisdictional discovery on us.

09:07:57  20  And Mr. McDonough explained three different

09:07:59  21  buckets, for lack of a better term, of discovery that they

09:08:04  22  believe they're entitled to, and I'll get to those three

09:08:07  23  buckets in a minute.  But what I did not hear Mr.

09:08:10  24  McDonough explain to us and what I have not heard from Mr.

09:08:13  25  McDonough, or anyone else representing Advanced

09:08:15  1   Aerodynamics in meet-and-confers, is a specific

09:08:18  2   description or identification of what those jurisdictional

09:08:21  3   issues are that are purportedly raised by Spin Master,

09:08:26  4   Limited's motion to dismiss for failure to join a

09:08:28  5   necessary party.

09:08:29  6            In our view, there are no jurisdictional issues

09:08:32  7   raised in that motion to dismiss that would entitle them

09:08:36  8   to jurisdictional discovery.  And before I explain why

09:08:38  9   that's the case, I think it's helpful to set the stage

09:08:41  10  again by explaining the two relevant Spin Master entities

09:08:46  11  that are at issue in this dispute.

09:08:48  12            THE COURT:  Okay.

09:08:48  13            MR. DAVENPORT:  So, first of all, we have the

09:08:50  14  defendant, Spin Master, Limited.  They're the only

09:08:52  15  defendant in the case.  And Spin Master, Limited is a

09:08:54  16  Canadian corporation with headquarters in Toronto.  We

09:08:59  17  also have -- and by the way, because of that, your Honor,

09:09:02  18  venue is proper here.  They're a foreign corporation.  And

09:09:05  19  there's no dispute as to whether or not jurisdiction is

09:09:07  20  proper before your Honor for Spin Master, Limited.  We've

09:09:11  21  not disputed that.  In fact, we've conceded for the

09:09:13  22  purposes of this case that jurisdiction is proper for Spin

09:09:17  23  Master, Limited.

09:09:17  24            Then we have Spin Master, Inc.  I'll call them

09:09:20  25  SMI and SML, if that's all right.  So Spin Master, Inc.,

09:09:25  1  you may have heard and recalled Mr. McDonough refer to

09:09:31  2  Spin Master, Inc. as a U.S. company, and they are a

09:09:34  3  subsidiary of Spin Master, Limited.  They're a Delaware

09:09:36  4  corporation, they're based in California, and they are not

09:09:39  5  a defendant in this case.

09:09:41  6        And in fact, the complaint doesn't even mention

09:09:44  7  SMI.  The complaint alleges that SML, Spin Master,

09:09:49  8  Limited, the Canadian corporation, infringed Advanced

09:09:53  9  Aerodynamics' patents by selling accused products in the

09:09:56  10  United States and by inducing endusers and retailers to

09:10:00  11  infringe those patents in the United States.  But it

09:10:02  12  doesn't contain or include any allegations against SMI,

09:10:06  13  the U.S. company.  And in fact, it doesn't even mention

09:10:10  14  SMI.  And the same is true for the infringement

09:10:13  15  contentions that were just served by Advanced

09:10:16  16  Aerodynamics.

09:10:16  17        So in our view, they failed to include a

09:10:22  18  necessary and indispensable party in that complaint

09:10:25  19  because SMI actually sells the accused products in the

09:10:29  20  United States; and therefore, we filed a motion to dismiss

09:10:32  21  for failure to join SMI in the case.  In that motion, we

09:10:37  22  explained that SMI sells these products in the United

09:10:39  23  States; and therefore, they're a primary participant in

09:10:42  24  the alleged conduct and, therefore, a necessary and

09:10:45  25  indispensable party.

09:10:46  1        And we also pointed out the fact that venue is

09:10:49  2   not proper over SMI in this district because under the TC

09:10:55  3   Heartland decision, they don't have a regular established

09:10:57  4   place of business here.  They're based in California and

09:10:59  5   they're a Delaware corporation.

09:11:00  6        So on those grounds, we argued in our motion to

09:11:03  7   dismiss that the case should be dismissed and that there

09:11:09  8   exists other forums or jurisdictions where Advanced

09:11:13  9   Aerodynamics can bring a case against both SMI and SML

09:11:17  10  where venue and jurisdiction is proper for both of those

09:11:20  11  entities; and therefore, the case should be dismissed

09:11:21  12  here.

09:11:22  13       Now, in response to that motion to dismiss,

09:11:26  14  rather than opposing it, we received discovery from

09:11:32  15  Advanced Aerodynamics in the form of RFAs.  We received

09:11:35  16  118 RFAs, which I think is about 75 more than is permitted

09:11:39  17  under your Honor's OGP.  We received 56 document requests,

09:11:44  18  and these were general RFAs and document requests seeking

09:11:47  19  everything from admissions about certain toy fairs that

09:11:52  20  SML attends, whether those toy fairs are important, about

09:11:55  21  property that SML leases or owns in the United States, or

09:11:58  22  IP that it might own in the United States, things of that

09:12:01  23  nature.  Very general RFAs and document requests.

09:12:05  24       And when we asked Advanced Aerodynamics why

09:12:09  25  jurisdictional discovery was appropriate here, we didn't

09:12:12  1  really get a firm response or an identification of what

09:12:16  2  jurisdictional issue was raised by the motion to dismiss.

09:12:19  3  The only explanation that we received was that in their

09:12:22  4  view, the motion to dismiss attacked certain allegations

09:12:25  5  in the complaint, and they pointed out those allegations.

09:12:30  6  And therefore, because those allegations related to

09:12:34  7  personal jurisdiction or jurisdiction, the motion attacked

09:12:38  8  jurisdiction; and therefore, discovery on those issues was

09:12:40  9  appropriate.

09:12:41  10         The problem with that, your Honor, is, as I've

09:12:43  11  already explained, personal jurisdiction or even subject

09:12:46  12  matter jurisdiction is not an issue in this case.  We

09:12:48  13  didn't attack it in our motion to dismiss.  We didn't say

09:12:51  14  jurisdiction was improper.  It's simply not an issue.  And

09:12:55  15  therefore, serving jurisdictional discovery under the

09:12:59  16  guise of jurisdictional issues that don't exist was

09:13:02  17  improper, and we objected on those grounds.

09:13:04  18         And in fact, we don't see any other

09:13:07  19  jurisdictional issues that our motion has raised that

09:13:10  20  warrant the type of discovery that Advanced Aerodynamics

09:13:13  21  is seeking.

09:13:14  22         Now, Mr. McDonough explained those three buckets

09:13:17  23  of discovery that I alluded to earlier that in his view,

09:13:21  24  his client is entitled to.  And so, let me address those.

09:13:25  25         The first two buckets relate to discovery on

09:13:29  1  alterego and agency.  And I'm not exactly sure what the

09:13:33  2  gist of those buckets of discovery are, but I think what

09:13:37  3  they're trying to say is that SMI, again, the U.S.

09:13:40  4  corporation, might be an alterego or an agent of SML, and

09:13:46  5  therefore, they're entitled to discovery as to whether or

09:13:49  6  not that's the case.  So there are a couple of problems

09:13:51  7  with that type of discovery, your Honor.

09:13:53  8       First of all, it's not jurisdictional discovery.

09:13:55  9  I'm not sure what you call it, but it doesn't have

09:13:57  10  anything to do with jurisdiction or any jurisdictional

09:14:00  11  issues here.  Certainly doesn't have anything to do with

09:14:03  12  any issues that were raised by the motion to dismiss.

09:14:07  13       The second problem with that type of discovery is

09:14:10  14  the complaint doesn't include any allegations whatsoever

09:14:14  15  related to an agency theory or an alterego theory.  And as

09:14:18  16  your Honor knows in the Fifth Circuit, if you're going to

09:14:20  17  pursue liability or damages based upon alterego or agency,

09:14:25  18  you need to include those claims or allegations of those

09:14:28  19  claims in your complaint.  They simply don't exist.

09:14:32  20       As I've mentioned, your Honor, SMI isn't even

09:14:35  21  mentioned in the complaint.  It's not mentioned in the

09:14:37  22  infringement contentions.  And if they were thinking of

09:14:40  23  pursuing an alterego or an agency theory, they have to

09:14:43  24  include those allegations in the complaint.  So even

09:14:46  25  putting the jurisdictional discovery aside, they're not

09:14:50  1   entitled to any discovery unless and until they include

09:14:53  2   agency or alterego claims in their complaint.  That is,

09:14:57  3   they're not entitled to any discovery on alterego or

09:15:00  4   agency.  It's simply not an issue in this case.

09:15:04  5          During prior meet-and-confers, they did mention

09:15:06  6   that they might amend their complaint to include those

09:15:08  7   claims, but they haven't done that.  So they're not

09:15:10  8   entitled to discovery on these two buckets, regardless of

09:15:13  9   whether or not they claim that discovery is jurisdictional

09:15:15  10  related.

09:15:17  11         Now, the third bucket of discovery they thought

09:15:18  12  that they are entitled to that Mr. McDonough described was

09:15:22  13  discovery to -- I think he said to test the evidence that

09:15:29  14  SML presented in the motion to dismiss.  And the evidence

09:15:31  15  that SML presented in the motion to dismiss was a

09:15:35  16  declaration that said, in essence, SMI, the subsidiary,

09:15:39  17  sells the accused products in the United States.  And

09:15:42  18  that's the issue that's germane here.  If SMI sells the

09:15:46  19  accused products in the United States, it is a necessary

09:15:48  20  and indispensable party because it's the primary

09:15:51  21  participant.

09:15:51  22         So the problems with seeking that type of

09:15:54  23  discovery under the guise of jurisdictional discovery,

09:15:56  24  your Honor, and under the standing order that your Honor

09:15:59  25  has issued for jurisdictional discovery, which is -- which

09:16:03  1  permits six months worth of discovery, is that, again,

09:16:06  2  this isn't jurisdictional discovery.  Testing the evidence

09:16:09  3  in a motion to dismiss that has nothing to do with

09:16:12  4  jurisdictional issues is not jurisdictional discovery.

09:16:15  5        Had they wanted to test that evidence, they

09:16:18  6  certainly could, or can in the future, seek leave from

09:16:20  7  your Honor to submit discovery requests to us on those

09:16:24  8  issues if they believe they're entitled to those.  But a

09:16:27  9  more fundamental problem with that third bucket of

09:16:30  10  discovery, your Honor, that Mr. McDonough believes

09:16:34  11  Advanced Aerodynamics is entitled to is that the only

09:16:37  12  germane issue in the motion to dismiss, that evidence I

09:16:40  13  talked about, is whether or not SMI sells the accused

09:16:43  14  products in the United States, and to my knowledge,

09:16:46  15  there's no dispute about that.

09:16:48  16        In fact, if Advanced Aerodynamics is seeking to

09:16:51  17  hold SML accountable for SMI's sales under an alterego or

09:16:57  18  agency theory, they must believe that SMI actually sells

09:17:00  19  the accused products in the United States, and they didn't

09:17:03  20  include them in the complaint, I can understand, for venue

09:17:07  21  reasons because venue isn't improper here.

09:17:10  22        So there's no -- to my mind, there's no dispute

09:17:13  23  as to whether or not that only germane issue in the motion

09:17:17  24  to dismiss is disputed here, that is, that SMI sells the

09:17:21  25  accused products in the United States.

| | |
|---|---|
| 09:17:23 | 1 |
| 09:17:25 | 2 |
| 09:17:29 | 3 |

And in any event, your Honor, the discovery that they served, again, those 118 RFAs, the 56 document requests, aren't targeted to that specific issue at all. Those requests, those RFAs, those document requests, hardly mentioned SMI at all. There might be one or two that work around the edges of SMI, but they're all aimed at SML, what SML does. Again, that's not germane to the motion to dismiss. What's germane to the motion to dismiss is that SMI sells the accused products in the United States. That's what makes SMI a necessary and indispensable party, and that's the basis for the motion to dismiss.

So I'll wrap up for a minute now, your Honor, and let Mr. McDonough or let you ask questions. But the point here is that, again, at a high level, our view is that there are zero jurisdictional issues that were raised by our motion to dismiss; and therefore, there's no jurisdictional discovery that is warranted under your Honor's standing order or on any basis, any other basis. And so, for that reason, we would ask your Honor to deny their request to serve that jurisdictional discovery and to set a date for them to respond to our motion to dismiss.

One more point, your Honor. Mr. McDonough referred to an e-mail exchange with the clerk about a --

| | | |
|---|---|---|
| 09:18:45 | 1 | what their view is a prior decision to allow them to take |
| 09:18:48 | 2 | the discovery.  I'd be happy to address that.  I don't |
| 09:18:51 | 3 | think that's germane here, but I'd be happy to address the |
| 09:18:54 | 4 | events that led to that if your Honor would like. |
| 09:18:57 | 5 | THE COURT:  Let's leave that aside for a second |
| 09:19:00 | 6 | and hear from the plaintiff's counsel. |
| 09:19:06 | 7 | MR. MCDONOUGH:  Your Honor, did you say you're |
| 09:19:08 | 8 | letting me respond? |
| 09:19:09 | 9 | THE COURT:  Yes, sir. |
| 09:19:10 | 10 | MR. MCDONOUGH:  Thank you, your Honor.  There's a |
| 09:19:14 | 11 | little bit of a funny situation here.  First time I've |
| 09:19:18 | 12 | argued and then, had a, you know, almost one-week pause |
| 09:19:24 | 13 | before the defendant responded.  So little bit new -- |
| 09:19:27 | 14 | THE COURT:  You can feel free to repeat anything |
| 09:19:29 | 15 | you said last week.  It won't -- |
| 09:19:31 | 16 | MR. MCDONOUGH:  Okay.  Yeah, I don't want to |
| 09:19:33 | 17 | be -- |
| 09:19:33 | 18 | THE COURT:  I've gone over this with my clerk, |
| 09:19:34 | 19 | but you're welcome to add any -- I had -- you all are |
| 09:19:37 | 20 | benefiting from the fact that I had a Markman set to start |
| 09:19:41 | 21 | shortly, and it went away because we did such a great job |
| 09:19:44 | 22 | on our preliminary constructions, they didn't need a |
| 09:19:46 | 23 | hearing.  So I'm happy to let you all argue this as fully |
| 09:19:51 | 24 | as you care to. |
| 09:19:53 | 25 | MR. MCDONOUGH:  Great.  Thank you. |

09:19:54   1          So I just want to bring it back to a couple of

09:19:56   2   simple facts here that were sort of glossed over by Mr.

09:20:01   3   Davenport, and I did raise initially but just want to make

09:20:04   4   clear.  The Court's clerk already allowed us to proceed in

09:20:12   5   jurisdictional and venue discovery.  The dispute was

09:20:15   6   brought up on March 29th.  The Court's clerk said -- and

09:20:24   7   this is a quote:  The Court's November 19th, 2020 standing

09:20:28   8   order also applies to motions to dismiss.  Therefore,

09:20:32   9   plaintiffs may proceed with jurisdiction venue-related

09:20:35   10  discovery.

09:20:36   11         Now, we did proceed with that discovery.  And

09:20:39   12  rather than respond to the discovery with objections and

09:20:46   13  any subsequent responses, we just got an e-mail saying

09:20:48   14  that they disagreed with our interpretation of the Court's

09:20:52   15  e-mail.  So here we are.  We think this is a very simple

09:20:59   16  dispute.

09:21:00   17         Although we heard a lot about SMI and SML and

09:21:06   18  sort of the idea that there are no jurisdictional or venue

09:21:09   19  issues raised by the motion, this thing attacks directly

09:21:14   20  jurisdiction and venue, although it does it sleekly from

09:21:18   21  the side by arguing that SML is not the primary

09:21:26   22  participant, that SMI is the one that should be named in

09:21:28   23  the suit.

09:21:29   24         So the motion, in our view, is crafted to avoid

09:21:32   25  the standing order-related discovery, but at the same

| | | |
|---|---|---|
| 09:21:35 | 1 | time, the evidence used to support it is squarely within |
| 09:21:37 | 2 | the scope of that order. |
| 09:21:42 | 3 | At bottom, when you look at the relief sought in |
| 09:21:45 | 4 | the motion, defendant contends that SMI, the U.S. entity, |
| 09:21:50 | 5 | must be added to this lawsuit and that SMI was added, |
| 09:21:53 | 6 | venue is improper under TC Heartland.  And, you know, at |
| 09:21:59 | 7 | bottom, that is what the motion argues.  The motion also |
| 09:22:04 | 8 | clearly argues that the defendant has no U.S. sales, which |
| 09:22:08 | 9 | contradicts everything that we plead in the complaint. |
| 09:22:12 | 10 | And again, just to respond to -- quickly to a |
| 09:22:16 | 11 | couple of points raised by Mr. Davenport.  We heard that |
| 09:22:21 | 12 | there's been no explanation of what jurisdictional and |
| 09:22:23 | 13 | venue issues were raised.  You know, I would disagree with |
| 09:22:27 | 14 | that.  We did point out many allegations in the complaint |
| 09:22:33 | 15 | that identifies Spin Master, Limited as the company that |
| 09:22:40 | 16 | infringes, that sells in the U.S., that contracts with |
| 09:22:44 | 17 | big-box retailers like Wal-Mart, Barnes & Noble and |
| 09:22:50 | 18 | Target. |
| 09:22:52 | 19 | The evidence -- one-sided evidence presented in |
| 09:22:55 | 20 | the motion contradicts directly all of those allegations. |
| 09:22:59 | 21 | But even setting that aside, I think what this boils down |
| 09:23:06 | 22 | to is, there are three ways that we can respond to this |
| 09:23:10 | 23 | complaint -- to this motion.  And all of them require a |
| 09:23:13 | 24 | detailed factual record prior to, you know, a fair |
| 09:23:18 | 25 | adjudication on the merits. |

| | | |
|---|---|---|
| 09:23:20 | 1 | And that's what we're seeking here.  You know, |
| 09:23:23 | 2 | there are -- there is public information that contradicts |
| 09:23:26 | 3 | much of what is said in the declaration and the evidence, |
| 09:23:30 | 4 | the table of evidence produced.  And there's good reason |
| 09:23:34 | 5 | that we named SML, not SMI, in the complaint to begin with |
| 09:23:40 | 6 | because they themselves, the defendant, has filed over 20 |
| 09:23:45 | 7 | cases in the U.S. that we could find where they |
| 09:23:48 | 8 | affirmatively represent that they sell toys in the U.S., |
| 09:23:52 | 9 | including the accused products, and that is as short as |
| 09:23:56 | 10 | one year ago.  They, of course, did that in seeking lost |
| 09:24:00 | 11 | profits on various patent and trademark disputes. |
| 09:24:03 | 12 | We know that based on the USPTO website that SML |
| 09:24:09 | 13 | is the owner of the trademarks.  They have an office in |
| 09:24:15 | 14 | Bentonville.  We know they import directly into the U.S. |
| 09:24:18 | 15 | based on import-export records that we've been able to |
| 09:24:21 | 16 | access.  And we believe that if given the chance to |
| 09:24:26 | 17 | conduct discovery, which we believe has already been |
| 09:24:29 | 18 | permitted, we'll be able to develop that record and show |
| 09:24:31 | 19 | that, in fact, contrary to what the defendant says that |
| 09:24:37 | 20 | the defendant is actually the primary participant and |
| 09:24:40 | 21 | directing and controlling all activities. |
| 09:24:43 | 22 | So at the end of the day, if we needed to amend |
| 09:24:47 | 23 | in order to pursue discovery on alterego or agent theory, |
| 09:24:53 | 24 | and I'm not sure that's necessary given the facts here and |
| 09:24:57 | 25 | all the public information directly contradicting the idea |

09:25:01  1  that SML is not the primary participant, but we could

09:25:05  2  always do that and proceed.  But I think allowing

09:25:10  3  discovery now for us to explore those and what I believe

09:25:14  4  will be fruitful in proving that the jurisdictional

09:25:20  5  allegations and the substantive evidence provided in the

09:25:23  6  motion to dismiss is not the whole story and that, in

09:25:30  7  fact, if SMI is a participant at all, it is a participant

09:25:35  8  as an agent or is an alterego for the defendant.

09:25:44  9      And the last point I'll make is, you know, we

09:25:47  10  heard the idea that defendant has conceded that personal

09:25:52  11  jurisdiction and venue are improper in this district, and,

09:25:56  12  you know, quite frankly, that's a postmortem artifice.  I

09:26:01  13  think after the Court's clerk gave the directive to

09:26:05  14  proceed with discovery, we suddenly heard that, oh, now

09:26:10  15  they're conceding personal jurisdiction and venue is

09:26:12  16  proper.  But unless they concede that the allegations in

09:26:15  17  our complaint are also proper which related to venue and

09:26:20  18  personal jurisdiction, I don't think they should be

09:26:22  19  allowed to circumvent our ability to test the evidence

09:26:26  20  that they put in the record.

09:26:28  21      And that's what this is really about.  It's about

09:26:30  22  testing that evidence.  We have a one-sided record and

09:26:33  23  they're asking for the ultimate adjudication here of

09:26:38  24  dismissal.  And so, we want to be able to fairly respond

09:26:41  25  to that motion and have that be decided on merits with a

09:26:48  1   developed record on those merits.

09:26:56  2          MR. DAVENPORT:  Your Honor, may I respond

09:26:57  3   briefly?

09:26:57  4          THE COURT:  Take all the time you care to.

09:26:59  5          MR. DAVENPORT:  Thank you.  Just a few points.

09:27:02  6          To start with the last point that Mr. McDonough

09:27:05  7   made about personal jurisdiction and us conveniently

09:27:11  8   conceding that personal jurisdiction is proper for the

09:27:13  9   purposes of this case over SML, that's not basis for that

09:27:18  10  argument, your Honor.  We did not attack personal

09:27:21  11  jurisdiction.  We did not in our motion to dismiss.

09:27:24  12         And as you know, your Honor, if a party wants to

09:27:27  13  attack personal jurisdiction, the party must do so in a

09:27:30  14  12(b) motion.  We haven't done so.  We've waived our right

09:27:33  15  to do so.  Personal jurisdiction, which, again, is the

09:27:36  16  issue in all of the allegations in the complaint that Mr.

09:27:40  17  McDonough pointed to today and what -- that he's pointed

09:27:44  18  to in the past, all of those allegations relate to

09:27:48  19  personal jurisdiction.  Personal jurisdiction is not an

09:27:50  20  issue in this case.

09:27:52  21         The second point that I'd like to make, your

09:27:55  22  Honor, is that Mr. McDonough is focused on discovery as to

09:27:59  23  whether or not SML sells the accused products in the

09:28:04  24  United States.  And what I've heard is a tacit admission

09:28:06  25  that that's what the discovery they've served seeks to

| 09:28:08 | 1 | establish.  First, again, that is not the germane issue in |
| 09:28:14 | 2 | the motion to dismiss.  Whether or not SML sells the |
| 09:28:17 | 3 | products in the United States is not the basis for that |
| 09:28:19 | 4 | motion.  The basis for that information is that SMI also |
| 09:28:23 | 5 | sells those products -- or sells those products in the |
| 09:28:25 | 6 | United States. |
| 09:28:27 | 7 | It is for that reason that SMI is a primary |
| 09:28:30 | 8 | participant in the alleged infringing conduct.  Not |
| 09:28:33 | 9 | because SML doesn't sell those.  And in fact, our motion |
| 09:28:37 | 10 | makes it very clear, if you look at the language, it says |
| 09:28:40 | 11 | regardless of whether or not SML sells products in the |
| 09:28:43 | 12 | United States, SMI does, and that's the basis for the |
| 09:28:47 | 13 | motion to dismiss, and that's the basis for saying that |
| 09:28:50 | 14 | SMI is a primary participant and a necessary and |
| 09:28:53 | 15 | indispensable party. |
| 09:28:55 | 16 | And because, your Honor -- I'll make one more |
| 09:28:59 | 17 | point and then, I'll see if you have questions.  But |
| 09:29:01 | 18 | because the type of discovery that they're serving on us |
| 09:29:06 | 19 | is related to whether or not SML sells the products in the |
| 09:29:10 | 20 | United States, not only does that establish that it's not |
| 09:29:12 | 21 | jurisdictional discovery, but, your Honor, that's |
| 09:29:15 | 22 | infringement discovery. |
| 09:29:16 | 23 | They're looking at -- as your Honor has described |
| 09:29:19 | 24 | in the past, there are really two types of infringement. |
| 09:29:21 | 25 | There's nontechnical infringement under 271(a).  Does the |

09:29:25  1  party sell the things in the United States or offer to

09:29:28  2  sell.  And then, there's technical infringement.  The type

09:29:30  3  of discovery that they're seeking here is all related to

09:29:33  4  the first type of infringement.  It's infringement

09:29:37  5  discovery, it's not jurisdictional discovery.  They're

09:29:40  6  trying to establish whether or not the only defendant in

09:29:42  7  the case sells the accused products in the United States.

09:29:45  8  That has nothing to do with the motion to dismiss.  It has

09:29:48  9  nothing to do with any jurisdictional issues.

09:29:50  10        And for those reasons, it's not proper

09:29:52  11  jurisdictional discovery under your Honor's standing

09:29:56  12  order.

09:30:00  13        THE COURT:  Any response to that?  Actually,

09:30:03  14  before we skip away from you, Mr. Davenport, let's just

09:30:07  15  assume, so I only have to have one hearing here, if the

09:30:10  16  Court were to determine that discovery was acceptable --

09:30:14  17  and I'm going to work on that, and you'll know in a couple

09:30:18  18  of days or sooner -- you have a concern also about the

09:30:24  19  number of RFAs, correct?

09:30:26  20        MR. DAVENPORT:  Well, I think the number of RFAs

09:30:30  21  is excessive.  It's 118.  It's clear that they're serving

09:30:35  22  those RFAs in a manner that wouldn't be proper under your

09:30:38  23  Honor's OGP.  The more pressing issue with the discovery

09:30:42  24  that has been served is not the sheer volume of the

09:30:46  25  discovery but the fact that it's not targeted to any

09:30:50  1  jurisdictional issue or any issue, in particular.  It's
09:30:53  2  broad-based discovery, the type of discovery that you
09:30:57  3  would see after the Markman hearing when typical discovery
09:31:00  4  requests are issued.  It's not targeted at any specific
09:31:03  5  issue.  It's certainly not targeted at whether or not SMI
09:31:06  6  sells the accused products in the United States.  It is
09:31:09  7  just general infringement discovery.
09:31:13  8          THE COURT:  Okay.  Mr. McDonough.
09:31:18  9          MR. MCDONOUGH:  Sure.  So, you know, to -- we
09:31:21  10  seem to be wading into the details of the actual discovery
09:31:24  11  served.  We might have met and conferred and actually made
09:31:30  12  some progress on the scope of those had Spin Master
09:31:36  13  actually responded to those properly on a
09:31:39  14  request-by-request basis.  We didn't get that.  We just
09:31:43  15  got a broad proclamation that they weren't going to
09:31:46  16  proceed with discovery.
09:31:47  17          So I believe it's premature to really delve into
09:31:51  18  the merits of that.  But suffice it to say that the
09:31:55  19  discovery is very targeted and is not generally, you know,
09:32:01  20  sort of identifying infringement in the abstract at all.
09:32:05  21  I mean, it's very specifically -- the RFAs very
09:32:10  22  specifically request for, you know, admissions on various
09:32:13  23  statements and representations that general counsel of SMI
09:32:17  24  has made in other actions.  It talks about importing and
09:32:24  25  exporting for SML, the defendant here.  Requests records

| | | |
|--|--|--|
| 09:32:28 | 1 | on that.  All things that we want to use to prove that the |
| 09:32:33 | 2 | public information we're able to get access to is |
| 09:32:37 | 3 | accurate, right, with SML's own evidence. |
| 09:32:40 | 4 | Because right now, we have unauthenticated |
| 09:32:43 | 5 | evidence showing a lot of these things, and, quite |
| 09:32:46 | 6 | frankly, the discovery is just designed to develop the |
| 09:32:51 | 7 | record there to ensure that we, in fact, have the correct |
| 09:32:53 | 8 | information of the information that's publicly available |
| 09:32:56 | 9 | is correct.  And again, if we needed to go through all of |
| 09:33:01 | 10 | the discovery requests, we could do that. |
| 09:33:03 | 11 | The last point is on the RFAs, it is my |
| 09:33:06 | 12 | understanding the limitations on RFAs, specifically along |
| 09:33:14 | 13 | with some others, were removed for jurisdictional and |
| 09:33:17 | 14 | venue discovery.  If the Court obviously believes that, |
| 09:33:22 | 15 | you know, that's excessive, we can, of course, tailor that |
| 09:33:27 | 16 | further, but that was not my understanding.  And again, |
| 09:33:29 | 17 | these are not broad-reaching RFAs.  They're very targeted. |
| 09:33:35 | 18 | They target specific employees in the U.S. of SML that, |
| 09:33:40 | 19 | based on LinkedIn, say that they sell in the U.S., |
| 09:33:43 | 20 | including the accused products or even stationed in the |
| 09:33:48 | 21 | United States. |
| 09:33:49 | 22 | So we are focused on those, not just broadly, you |
| 09:33:53 | 23 | know, serving discovery on anything technical or, you |
| 09:33:57 | 24 | know, any sort of discovery that would inform the |
| 09:34:00 | 25 | infringement analysis. |

09:34:05  1          THE COURT:  Mr. Davenport, anything else?

09:34:07  2          MR. DAVENPORT:  Yes.  Your Honor, just one more

09:34:10  3   point, not to belabor this, but the type of discovery that

09:34:12  4   Mr. McDonough is talking about as he is confirming in his

09:34:16  5   description is related to whether or not SML sells

09:34:20  6   products in the United States.  Again, that is discovery

09:34:23  7   on an issue that is not germane to the motion to dismiss.

09:34:26  8   If they truly do believe they need discovery in order to

09:34:30  9   respond to the motion to dismiss, that discovery would be

09:34:32  10  targeted at whether or not SMI sells the products in the

09:34:38  11  United States because that is the only germane issue in

09:34:40  12  the motion, whether or not SMI is a primary participant.

09:34:43  13         Whether or not SML sells those products, whether

09:34:46  14  or not there is an alterego relationship isn't proper

09:34:49  15  discovery at this point, especially considering there is

09:34:52  16  no alterego allegation, there is no agency allegation or

09:34:57  17  claim of liability, or damages, or anything of that

09:34:59  18  nature, in their complaint.  It just does not exist.  It

09:35:02  19  doesn't exist in the allegations read as a whole, and it

09:35:06  20  doesn't exist specifically in their complaint.  It is not

09:35:08  21  a claim that they've made so far.

09:35:14  22         THE COURT:  Anything else?

09:35:18  23         MR. MCDONOUGH:  No, your Honor.  I think that

09:35:21  24  we'll rest with the idea that we're just here to try to

09:35:27  25  enforce what the Court's clerk directive that was already

09:35:29   1   given.  We'd like an order compelling our response to

09:35:32   2   discovery so we can move forward.

09:35:34   3          THE COURT:  I'm taking a look at it afresh.  If

09:35:38   4   that's -- is there anything else we need to take up?

09:35:42   5          MR. DAVENPORT:  Nothing at this point, your

09:35:44   6   Honor.

09:35:44   7          MR. MCDONOUGH:  I don't believe so, your Honor.

09:35:46   8          THE COURT:  I'm going to get to work with my

09:35:47   9   clerk, and we should have something out to you within just

09:35:49   10  a day or so.  Okay?

09:35:52   11          MR. MCDONOUGH:  Thank you.

09:35:52   12          MR. DAVENPORT:  Thank you for the time, your

09:35:52   13  Honor.

09:35:52   14          THE COURT:  Thank y'all very much.

09:35:54   15          MR. HARDT:  Thank you, your Honor.

           16          (Proceedings concluded.)

           17

           18

           19

           20

           21

           22

           23

           24

           25

1                              *  *  *  *  *  *

2

3

4    UNITED STATES DISTRICT COURT  )

5    WESTERN DISTRICT OF TEXAS)

6

7        I, LILY I. REZNIK, Certified Realtime Reporter,

8    Registered Merit Reporter, in my capacity as Official

9    Court Reporter of the United States District Court,

10   Western District of Texas, do certify that the foregoing

11   is a correct transcript from the record of proceedings in

12   the above-entitled matter.

13       I certify that the transcript fees and format comply

14   with those prescribed by the Court and Judicial Conference

15   of the United States.

16       WITNESS MY OFFICIAL HAND this the 22nd day of June,

17   2021.

18

19

20                              */s/Lily I. Reznik*
                                LILY I. REZNIK, CRR, RMR
21                              Official Court Reporter
                                United States District Court
22                              Austin Division
                                501 W. 5th Street,
23                              Suite 4153
                                Austin, Texas 78701
24                              (512)391-8792
                                SOT Certification No. 4481
25                              Expires:  1-31-23