**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **ADVANCED AERODYNAMICS, LLC,** <br> ***Plaintiff*** <br> **-v-** <br> **SPIN MASTER LTD.,** <br> ***Defendant*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 6:21-cv-00002-ADA** |

**REPORT AND RECOMMENDATION OF THE SPECIAL MASTER REGARDING CLAIM CONSTRUCTION**

Pursuant to Order Appointing Special Master (Dkt. 60), the Special Master respectfully submits the following Report and Recommendation (the "Report") to the Honorable Alan Albright of the United States District Court for the Western District of Texas.

On October 20, 2021, a hearing was held to determine the proper construction of disputed claim terms in United States Patent Nos. 8,528,854 (the '8,854 Patent), 9,067,667 (the '667 Patent), 9,216,808 (the '808 Patent), 9,434,462 (the '462 Patent), and 10,569,854 (the '9,854 Patent) (collectively, the "Asserted Patents"). The Special Master has considered the arguments made by the parties in the claim construction hearing and their briefs (Dkts. 44, 48, 52 and 55) the intrinsic evidence and cited extrinsic evidence.

## I. BACKGROUND OF THE ASSERTED PATENTS

The asserted patents, which are all titled "Self-Righting Frame and Aeronautical Vehicle, generally relate to self-righting aeronautical vehicles, such as remote-control helicopters." In the disclosed embodiments, the aeronautical vehicle frames have vertical oval-shaped frame members and a weight in the bottom. As shown in the figures below, when the aeronautical

vehicle lands in a non-upright position, the shape of the vertical frame members and weight in the bottom of the frame cause the aeronautical vehicle to rotate to an upright position.




## II. APPLICABLE LAW

The general rule is that claim terms are generally given their plain and ordinary meaning. *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (*vacated on other grounds*). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. Claims must be read in view the specification, and the specification is highly relevant and the single best guide to the claim construction analysis. *Id.* at 1315.

"'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp*., 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the

intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

There "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* at 1365. To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent "a clear disavowal of claim scope." *Id*. at 1366. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp*., 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp*., 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id*. at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id*.

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 910 (2014). If it does not, the claim is

therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id*. at 911. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. LEVEL OF ORDINARY SKILL IN THE ART

It is well established that patents are interpreted from the perspective of one of ordinary skill in the art. *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The Federal Circuit has advised that the "[f]actors that may be considered in determining the level of skill in the art include: (1) the educational level of the inventors; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env'tl Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696 (Fed. Cir. 1983). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc*., 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Defendant asserts a person of ordinary skill would have at least a bachelor's degree in aeronautical engineering or the equivalent and at least two years of practical experience in aeronautical engineering. Dkt. 44 at 12. Plaintiff does not dispute Defendant's proposed level of skill or proffer its own. Having considered the parties' position and the relevant factors, the Special Master recommends finding that a person of ordinary skill in the art of the Asserted Patents would have had a bachelor's degree in aeronautical engineering or the equivalent, and at least two years of practical experience in aeronautical engineering.

## IV. CONSTRUCTION OF DISPUTED TERMS

### 1. "SELF-RIGHTING"

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "self-righting"<br><br>'8,854: 1, 2-9, 10, 17, 23<br>'667: 1, 2-9, 10, 11-17, 18, 19-23<br>'808: 1, 2-7, 8, 9-14, 15, 16- 21<br>'462: 1,2-8, 9, 10- 16, 17, 18-24<br>'9,854: 1, 2-9, 10, 11-20 | "will bring itself from any and all possible non-right-side-up positions into its proper vertical right-side-up position" | No construction necessary |

Defendant argues "self-righting" requires self-righting from "any and all positions." Plaintiff does not proffer a construction, but argues "any and all" is an attempt to read a limitation into the claims that is not supported by the intrinsic evidence. Dkt. 48 at 11-12. Without expressly stating its position, Plaintiff appears to argue it is sufficient to self-right from some, but not all, positions.

The parties dispute the plain and ordinary meaning of "self-righting." Thus, the analysis turns to the intrinsic evidence starting with the language of the claims. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Self-righting" appears in the preambles of all the asserted claims, and the surrounding claim language does not shed light on the dispute.

The specification repeatedly uses "self-righting" to mean righting from any position other than upright. For example, the Field of the Invention states a self-righting frame "rights itself to an upright orientation **regardless** of the frame's initial orientation." '8,854 Patent, 1:17-19 (emphasis added). The specification also repeatedly describes a self-righting frame as a frame that rights itself from a position **other than upright**. *See, e.g., id.*, 2:19-24 ("a self-righting structural frame … is need to permit remote operation … without the need to … right the vehicle in the event the previous landing results in a vehicle orientation **other than upright**" (emphasis added)); *id.*,

7:15-22 ("The self-righting frame 140 of VTO aeronautical vehicle 120 cause vehicle 120 to, in the event of **other than upright** landing, re-orient itself without the aid of the user." (emphasis added)). Neither party cites to the prosecution history, so the specification is the only relevant intrinsic evidence.

There is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification. *Comark*, 156 F.3d at 1186-87. In this case, the specification informs the usage of "self-righting" in the context of the Asserted Patents. The recommended construction is taken directly from the patentee's description of the "Field of the Invention" (*see* '8,854 Patent, 1:17-19) rather than from the description of a particular embodiment or example, and there is nothing in the intrinsic record that indicates a contrary construction.

During the claim construction hearing, Plaintiff argued for the first time that several claims provide details of an initial orientation from which a vehicle rights itself. *See* Dkt. 65 at 8-10 (discussing '9,854 Patent, Claims 1, 3 and 4). Plaintiff argued because the patentee knew how to define an initial orientation in some claims, the construction of "self-righting" should not address the initial orientation. The inclusion of initial orientation limitations in a few claims of one asserted patent, however, does not override the clear teachings of the specification. Furthermore, the claims cited by Plaintiff are consistent with the recommended construction. Claim 1 of the '9,854 Patent recites self-righting from "any angle other than generally upright," which is consistent with the recommended construction. Dependent Claims 3 and 4 add further limitations regarding the initial orientation, which reinforce the broader scope of "self-righting" in independent Claim 1.

For the foregoing reasons, the Special Master recommends a construction of: "righting to an upright orientation regardless of an initial orientation."

**2. "APEX"**

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "apex"<br><br>'8,854: 1, 7, 9, 10, 15, 16, 23, 24<br>'667: 1, 10, 18<br>'808: 1, 6, 8, 13, 15, 20<br>'462: 1, 6, 9, 14, 17, 22 | "highest tip when in the proper vertical right-side-up position" | No construction necessary |

The parties do not argue: (1) "apex" is a term of art with a particular meaning to a person of ordinary skill; (2) the patentee acted as a lexicographer with respect to this term; nor (3) the patentee disavowed the full scope of the term. Thus, the term should be construed according to its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365.

Defendant argues its construction is consistent with the plain and ordinary meaning of "apex," (Dkt. 44 at 16) but the plain and ordinary meaning of "apex" is not limited a "vertical right side-up position." Thus, the Special Master rejects Defendant's proposed construction as inconsistent with the plain and ordinary meaning. Having rejected Defendant's proposed construction, the Special Master concludes no further construction is necessary. *See Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."); *see also Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("The district court rejected Samsung's argument that ongoing activity is required — the heart of the parties' disagreement — and declined to further construe the term because it was a 'straightforward term' that required no construction … . Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the term.").

"Apex" is an ordinary English word. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy IP Holdings, LLC v.*

*Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014). Merely rephrasing or paraphrasing the term will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862-63 (Fed. Cir. 2004) ("merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction"). Accordingly, the Special Master recommends applying the plain and ordinary meaning of this ordinary English word.

**3. "INSTABILITY"**

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "instability"<br><br>'8,854: 1, 10<br>'667: 1, 8, 10, 16, 18<br>'808: 1, 6, 7, 8, 13, 14, 15, 20, 21<br>'462: 1, 6, 7, 9, 14, 15, 17, 22, 23<br>'9,854: 1, 10 | "state of having a single point of contact so that a force will cause movement" | No construction necessary |

Defendant's proposed construction is derived from a description of an orientation of an aeronautical vehicle in Fig. 8 of the '8,854 Patent:

> In FIG. 8, vehicle **120** has **hypothetically landed in a worst case inverted orientation** on surface **102** wherein aeronautical vehicle **120** is hypothetically resting on surface **102** at a single point of contact of spherical portion **160** of protrusion **158**. Because of the spherical geometry of portion **160** or other geometry employed such that in an inverted orientation, there is only single point contact such as with a portion **160** being conical, protrusion **158** imparts an initial instability to frame assembly **140**. … The **initial instability** initiates a moment force "M" **189** to begin rotating vehicle **120** about the point of contact of portion **160**.

Dkt. 44 at 17-18 (quoting '8,854 Patent at 7:29-39) (emphasis added). As indicated, Figure 8 depicts a "hypothetical" landing configuration "in a worst case" orientation, and the description relates to an "initial instability" rather than instabilities in general. *See id.*

Defendant's construction elevates the description of Figure 8 to special lexicography for "instability." But Figure 8 and the description thereof are merely an example of an instable

orientation, and do not attribute a special meaning or lexicography to "instability." Accordingly, the Special Master rejects Defendant's proposed construction, and concludes no further construction is necessary. *See Vivid Techs.*, 200 F.3d at 803 ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."); *see also Summit* 6, 802 F.3d at 1291.

"Instability" is an ordinary English word. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy*, 2014 WL 3735222, at *2. Merely rephrasing or paraphrasing the term will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard*, 388 F.3d at 862-63. For the foregoing reasons, the Special Master recommends applying the plain and ordinary meaning of this ordinary English word.

**4. "INVERTED"**

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "inverted"<br><br>'8,854: 1, 7, 10, 15, 24<br>'667: 1, 8, 16, 18<br>'9,854: 3-7, 14-18 | "being in a vertical upside-down position" | No construction necessary |

The parties do not argue: (1) "inverted" is a term of art with a particular meaning to a person of ordinary skill; (2) the patentee acted as a lexicographer with respect to this term; nor (3) the patentee disavowed the full scope of the term. Thus, the term should be construed according to its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. Indeed, Defendant argues its construction is the "ordinary meaning," and cites to general dictionary definitions in support thereof. Dkt. 44 at 19.

"Inverted" is an ordinary English word. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy*, 2014 WL 3735222, at *2. The parties do not raise any dispute regarding the ordinary meaning of this term other than seeking to rephrase it. Merely rephrasing or paraphrasing the term, however, will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard*, 388 F.3d at 862-63. Accordingly, the Special Master recommends applying the plain and ordinary meaning of this ordinary English word.

### 5. "UPRIGHT"

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "upright"<br><br>'8,854: 1, 7, 10, 24<br>'667: 1, 8, 10, 16, 18<br>'9,854: 1, 2, 6, 7, 10, 11-13, 17, 18 | "being in a vertical right-side-up position" | No construction necessary |

The parties do not argue: (1) "upright" is a term of art with a particular meaning to a person of ordinary skill; (2) the patentee acted as a lexicographer with respect to this term; nor (3) the patentee disavowed the full scope of the term. Thus, the term should be construed according to its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. Indeed, Defendant argues its construction is the "ordinary meaning," and cites to general dictionary definitions in support thereof. Dkt. 44 at 21.

"Upright" is an ordinary English word. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy*, 2014 WL 3735222, at *2. The parties do not raise any dispute regarding the ordinary meaning of this term other than seeking to rephrase it. Merely rephrasing or paraphrasing the term, however, will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard*, 388 F.3d at

862-63. Accordingly, the Special Master recommends applying the plain and ordinary meaning of this ordinary English word.

**6. "PROTRUSION"**

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "protrusion"<br><br>'8,854: 23, 24<br>'808: 1, 6, 7, 8, 13, 14, 15, 20, 21<br>'462: 1, 7, 9, 15, 17, 23 | "portion shaped to jut out from the surrounding surface to form a single point of contact" | No construction necessary |

The parties do not argue: (1) "protrusion" is a term of art with a particular meaning to a person of ordinary skill; (2) the patentee acted as a lexicographer with respect to this term; nor (3) the patentee disavowed the full scope of the term. Thus, the term should be construed according to its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. Indeed, Defendant argues its construction is "consistent with the ordinary meaning," and cites to dictionary definitions in support thereof. Dkt. 44 at 21.

"Protrusion" is an ordinary English word. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy*, 2014 WL 3735222, at *2. The parties do not raise any dispute regarding the ordinary meaning of this term other than seeking to rephrase it. Merely rephrasing or paraphrasing the term, however, will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard*, 388 F.3d at 862-63. Accordingly, the Special Master recommends applying the plain and ordinary meaning of this ordinary English word.

**7. "OFF-KILTER"**

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "off-kilter" | "any and all non-right-side-up positions" | No construction necessary |

| | | |
|---|---|---|
| ’667: 1, 10 | | |

Defendant argues the ’667 Patent specifies what “off-kilter” means but proffers a construction that differs from that lexicography. Dkt. 44 at 24.

The specification of the ’667 Patent states:

> The term[] off-kilter … refer[s] to a condition where the aeronautical vehicle is not resting on [an] aeronautical vehicle supporting surface in a desired state or in a proper orientation.

’667 Patent, 4:41-44. The Special Master determines the patentee acted as his own lexicographer with respect to this term.

Because the specification specifies what “off-kilter” means, the Special Master recommends construing the term based on the patentee’s lexicography—“not resting in a desired state or in a proper orientation.”

### 8. “IN REGISTRATION”

| Claim Term | Defendant’s Construction | Plaintiff’s Construction |
|---|---|---|
| “at least two generally vertically oriented frame members in registration with a plane extending radially outward from a central axis”<br><br>’667: 10, 18 | Indefinite | No construction necessary |

Defendant alleges “in registration” is indefinite because a person of ordinary skill “would not understand with reasonable certainty what it means for the frame members to be ‘in registration’ with the claimed plane. Dkt. 44 at 26. Plaintiff alleges “in registration” has a commonly understood meaning of “properly aligned.” Dkt. 48 at 27.

To establish indefiniteness, Defendant has the burden to prove the claim does not “inform those skilled in the art about the scope of the invention with reasonable certainty,” and must do so by clear and convincing evidence. *See Sonix Tech.*, 844 F.3d at 1377.

The term "in registration" is used in the specification to describe the relationship between a protrusion and an apex: "the protrusion 158 would preferably be in registration with the apex of the frame assembly 140." '667 Patent, 8:63-65. As shown in Figure 3 below, protrusion 158 is aligned with or centered on the apex of the frame assembly 140. This interpretation of "registration" is consistent with contemporaneous dictionary definitions, such as "a condition of correct alignment or proper relative position." *See* Dkt. 48, Ex. C (Merriam-Webster Dictionary).



*FIG. 3*

While the specification does not use the term "in registration" with respect to the relationship between a vertical frame member and a plane, a person of ordinary skill could understand with reasonable certainty that the claim term requires a vertical frame member to be in alignment with a plane extending radially outward from a central axis. As one example, a vertical plane represented by the paper on which Figure 3 is printed extends radially outward from vertical axis 150 and vertical frame member 142 is in alignment with that plane. Defendant has not met

its burden to show that a person of ordinary skill in the art would not understand "in registration" consistent with its plain meaning and the specification to mean "in alignment."

Based on the use of "in registration" in the specification and the dictionary definitions of "registration" cited by Plaintiff, the Special Master recommends construing "in registration" as "in alignment." The parties do not raise a dispute as to the remainder of this term and thus it should have it plain and ordinary meaning.

### 9. "LOCATED GENERALLY CENTERED"

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| "located generally centered"<br><br>'808: 1, 6, 7, 8, 13, 14, 15, 20, 21<br>'462: 1, 6, 7, 9, 14, 15, 17, 22, 23 | "positioned at a point that is generally equally distant from the sides of the claimed section or region" | No construction necessary |

The parties do not argue: (1) "located generally centered" is a term of art with a particular meaning to a person of ordinary skill; (2) the patentee acted as a lexicographer with respect to this term; nor (3) the patentee disavowed the full scope of the term. Thus, the term should be construed according to its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. Indeed, Defendant argues its "proposed construction is the ordinary meaning of the phrase" and cites to dictionary definitions of "located" and "centered" in support thereof. Dkt. 44 at 26.

This term is comprised of ordinary English words used in their ordinary English sense. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy*, 2014 WL 3735222, at *2. The parties do not raise any dispute regarding the ordinary meaning of this term other than seeking to rephrase it. Merely rephrasing or paraphrasing the term, however, will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard*, 388 F.3d at 862-63. Accordingly, the Special

Master recommends applying the plain and ordinary meaning to this term comprised of ordinary English words.

**10. "WHEN THE STRUCTURAL FRAME CONTACTS THE GENERALLY HORIZONTAL SURFACE AT ANY ANGLE OTHER THAN THE GENERALLY UPRIGHT ANGLE"**

| Claim Term | Defendant's Construction | Plaintiff's Position |
|---|---|---|
| "when the structural frame contacts the generally horizontal surface at any angle other than the generally upright angle"<br><br>'9,854: 1, 10 | "when the structural frame is in any and all positions other than its vertical right-side-up position" | No construction necessary |

The parties do not argue: (1) "when the structural frame contacts the generally horizontal surface at any angle other than the generally upright angle" is a term of art with a particular meaning to a person of ordinary skill; (2) the patentee acted as a lexicographer with respect to this term; nor (3) the patentee disavowed the full scope of the term. Thus, the term should be construed according to its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. Indeed, Defendant argues its proposed construction is the plain meaning of the term. Dkt. 44 at 28 ("[Defendant] proposes that this limitation means exactly what it says.").

This term is comprised of ordinary English words used in their ordinary English sense. It is not difficult or too technical in nature such that a construction would help the jury's understanding of the term. *See Kroy*, 2014 WL 3735222, at *2. The parties do not raise any dispute regarding the ordinary meaning of this term other than seeking to rephrase it. Merely rephrasing or paraphrasing the term, however, will not help a jury understand or apply this term, and risks distorting its plain meaning. *See C.R. Bard*, 388 F.3d at 862-63. Accordingly, the Special Master recommends applying the plain and ordinary meaning to this term comprised of ordinary English words.

## V. CONCLUSION

In light of the foregoing, the Special Master recommends ADOPTING the recommended claim constructions for the reasons stated above. For ease of reference, the recommended claim constructions are set forth in Appendix A.

Pursuant to the Order Appointing Special Master, the parties may, in a manner mirroring Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636, file timely objections to any of the findings, conclusions, and recommendations contained in this Report. (Dkt. 60).

DATED: March 15, 2022

RESPECTFULLY SUBMITTED.

By: /s/ Darryl J Adams
Darryl J. Adams
Texas Bar No. 00797101
dadams@sgbfirm.com
SPECIAL MASTER

**CERTIFICATION OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing REPORT AND RECOMMENDATION OF THE SPECIAL MASTER REGARDING CLAIM CONSTRUCTION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: /s/ Darryl J Adams

**APPENDIX A**

| Term | Recommended Construction |
|---|---|
| self-righting | "righting to an upright orientation regardless of an initial orientation" |
| apex | Plain and ordinary meaning. |
| instability | Plain and ordinary meaning. |
| inverted | Plain and ordinary meaning. |
| upright | Plain and ordinary meaning. |
| protrusion | Plain and ordinary meaning. |
| off-kilter | "not resting in a desired state or in a proper orientation" |
| in registration | "in alignment" |
| located generally centered | Plain and ordinary meaning. |
| when the structural frame contacts the generally horizontal surface at any angle other than the generallyupright angle | Plain and ordinary meaning. |